IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
MAR 27 2012

| | |
|---|---|
| Curtis M. James,<br>    Petitioner, | )<br>)<br>) |
| v. | )    1:11cv883 (LO/JFA) |
| Raleigh H. Isaacs,<br>    Respondent. | )<br>)<br>)<br>) |

## MEMORANDUM OPINION

Curtis M. James, a Virginia inmate proceeding pro se, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in the Circuit Court for the City of Portsmouth, Virginia. On December 14, 2011, respondent filed a Rule 5 Answer accompanied by a Motion to Dismiss and supporting brief. Petitioner was given the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and he has filed no reply. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be dismissed.

### I. Background

Petitioner is confined pursuant to a final judgment of the Circuit Court for the City of Portsmouth, Virginia entered on July 30, 2009. CR09-000261-01. Following a bench trial, petitioner was convicted of attempted burglary. The trial court sentenced petitioner to five years in prison with two and one-half years suspended. Id.

The following facts underlie petitioner's conviction. On December 19, 2008, Jennifer Turner awoke to the sound of her bedroom window shattering. James v. Commonwealth, R. No. 1730-09-1 at 2. She gathered her children and called the police. Id. Turner remained on the phone with dispatch until the police arrived moments later. Id.

Officer A. Mannings, acting on a call for "burglary in progress," arrived on the scene first. Id. Officer Mannings approached Turner's apartment and heard the sound of breaking glass coming from the alley between Turner's apartment and the adjacent building. Id. Mannings walked to the alley and observed petitioner standing under Turner's broken window with his arms stretched over his head. Id. Mannings shined his flashlight at petitioner and said "Freeze. Police." Id. Petitioner dropped an object he was holding in his hands and began to run. Id. After a short chase, Manning caught up with petitioner and ordered him to "get on the ground." Id. Petitioner replied by exclaiming, "I live here. I live in Apartment 2." Id. Mannings placed petitioner in handcuffs and explained to him that he was "under investigative detention until we [find] out what was going on." Id. Mannings left petitioner with his partner, Officer Foster, and returned to the alley where he initially observed petitioner. Id. Mannings found a brick and broken glass under Turner's window where petitioner was previously standing. Mannings then entered Turner's apartment to interview her. Id.

While Officer Foster and petitioner were standing on the sidewalk, petitioner asked, "What's going on? Why did he put me in handcuffs?" Id. Foster explained that she and Mannings were responding to a burglary call. Id. Petitioner stated he "didn't know anything about a burglary" because he and his cousin had just returned from a nightclub. Id. Foster reminded petitioner he was not under arrest. Petitioner then stated, "Okay. The person who called knows me. Ask if they know Curtis James. They will tell you we just came from the club." Id. at 2-3. Foster told petitioner she would "relay the message." Id. at 3. Because "it was cold" outside, Foster told petitioner "to go ahead and have a seat" in the police car, and she again reminded petitioner "he was not under arrest." Id.

After a few moments of silence in the squad car, Officer Foster asked petitioner for some "pedigree" information, such as his name, his date of birth, and whether he still resided in Suffolk,

Virginia. Id. Petitioner responded to the questions and also stated, "But for real Officer, I was at the club with my cousin and I was leaving but then I had to take a shit so I came back to my cousin's. I am not trying to be rude. I am just trying to tell you what's going on." Id. Foster asked petitioner which apartment his cousin lived in, and petitioner claimed his cousin lived in the apartment Officer Mannings entered. Foster also asked petitioner whether he had a car in the parking lot and petitioner pointed to a red Nissan Maxima, indicating that it was his. Id.

After another "three or four minutes of silence" petitioner again asked Officer Foster "What is going on?" Id. Again, Foster told petitioner that the officers were responding to a burglary call. Id. Petitioner stated "Oh, I didn't have anything to do with that. I was at the club and I came here to drop off a friend that lives here with her mama." Id. Foster responded by saying "I thought you came back here to use your cousin's bathroom." See Commonwealth's Answer to Disc. Petitioner stated, "No. I came back here with my friend and her sister." Id. In an attempt to clarify petitioner's story, Foster asked, "Okay, so you left the club, and you came here to drop off a friend and her sister?" to which petitioner responded, "No, I came here with a friend to drop off her sister." Id.

Mannings returned to the police car and Foster explained petitioner's story to Mannings. R. No. 1730-09-1 at 3. However, petitioner interrupted the officers' conversation to deny ownership of the Nissan Maxima and to assert that he had just returned from a club. Id. At that time, the officers informed petitioner he was under arrest for burglary. Id.

Petitioner pursued a direct appeal, arguing the evidence was insufficient to support his convictions for attempted burglary and that the trial court erred in denying his motion to suppress statements he made to police because the statements were obtained in violation of Miranda v. Arizona, 384, U.S. 436 (1966). The Court of Appeals of Virginia denied the petition for appeal in a per curiam opinion on January 29, 2010. R. No. 1730-09-1. On July 22, 2010, the Supreme

Court of Virginia refused petitioner' request for further appeal. R. No. 100259. Petitioner did not file a state habeas petition.

On July 26, 2011, petitioner timely filed the instant federal habeas petition,[1] raising the following claims:

> (1) Violation of the Fifth and Fourteenth Amendment. In support of his claim petitioner alleges that the Commonwealth failed to prove beyond a reasonable doubt that he had the intent to commit larceny "by way of verbal of [sic] physical intent." Petitioner also alleges that the officer never saw tools or stolen property, the victim did not see him trying to get into her apartment, and his witnesses testified to "w[h]ere I was at." Pet. at 6, ECF No. 1.
>
> (2) Fifth Amendment Miranda violation and Fourteenth Amendment Due Process violation. In support of his claim petitioner argues that the appeal transcript excerpts attached to the petition prove that he was never read his Miranda rights, and he argues he was in custody and was interrogated by police. Petitioner alleges that he was intoxicated at the time of questionong and felt threatened by "presence of force and [being] cuffed." Id. at 8.

These claims are the same claims presented by petitioner on direct appeal. Therefore, it is uncontested that the claims are exhausted for purposes of federal review. Accordingly, the Court will address the merits of petitioner's claims.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas petition, a federal court may not grant the petition based on the claim unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The evaluation of whether a state

---

[1] For pro se prisoners a petition is deemed filed when the prisoner places it in the prison mailing system. Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988). In this case, petitioner certifies that he placed the petition in the prison mailing system on July 26, 2011.

4

court decision is "contrary to" or "an unreasonable application of" federal law is based on an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination runs afoul of the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Importantly, this standard of reasonableness is an objective one. Id. at 410. Under this standard, "[t]he focus of federal court review is now on the state court decision that previously addressed the claims rather than the petitioner's free-standing claims themselves." McLee v. Angelone, 967 F.Supp. 152, 156 (E.D. Va. 1997), appeal dismissed, 139 F.3d 891 (4th Cir. 1998) (table).

### III. Analysis

A. Claim 1: Insufficiency of the Evidence:

In his first claim, petitioner argues that the evidence was insufficient to sustain his conviction for attempted burglary because the Commonwealth did not prove beyond a reasonable doubt that he had the requisite intent to commit larceny. When petitioner presented this claim to the Court of Appeals of Virginia on direct appeal, the court rejected the claim, explaining in part:

> [W]hen an unlawful entry is made into [the] dwelling of another, the presumption is that the entry was made for an unlawful purpose, and the specific intent with which such entry was made may be inferred from the surrounding facts and circumstances." [Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314 (1979), Thus, "[i]n the absence of evidence showing a contrary intent, the trier of fact may infer that a defendant's unauthorized presence in [the] house of another was with the intent to commit larceny." Id. at 837, 252 S.E. 2d at 314.

> Accordingly, appellant's failure to put on evidence demonstrating a lawful intent for his attempted entry into Turner's apartment supports the inference that he acted with the intent to commit larceny. See Black v. Commonwealth, 222 Va. 838, 841, 284 S.E. 2d 608, 609 (1981) (applying the inference to attempted breaking and entering).
>
> From the evidence presented, the trial court could reasonably infer appellant attempted to break and enter the apartment building with the intent to commit larceny. Appellant broke Turner's window with a brick late at night and provided conflicting explanations for his presence outside her apartment. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of attempted burglary.

R. No. 1730-09-1 at 5. The foregoing determination, which was the last reasoned state court decision, is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

On federal habeas review, the standard for a claim challenging the sufficiency of the evidence supporting a state conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis original). The federal court is required to give deference to findings of fact made by the state courts, and this presumption of correctness applies to facts found by both trial and appellate courts. 28 U.S.C. § 2254(d); Sumner v. Mata, 449 U.S. 539, 546-47 (1981); see Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998) (citing Wright v. West, 505 U.S. 277, 292 (1992) for the holding that a federal habeas court is prohibited from either "consider[ing] anew the jury's guilt determination or "replac[ing] the state's system of direct appellate review"). Instead, the federal court must determine only whether the trier of fact made a rational decision to convict. Herrera v. Collins, 506 U.S. 390, 402 (1993).

Here, based on the evidence presented at trial it was reasonable for the trial court to conclude that petitioner broke Turner's window with the intent to commit larceny. Petitioner presented no evidence demonstrating that he was lawfully attempting to enter Turner's apartment. Based on Virginia law, this alone was sufficient for the court to infer that petitioner had the intent to commit larceny. Furthermore, Turner testified that she did not know petitioner and that he did not have permission to enter her apartment. Id. at 57. Additionally, the Commonwealth presented testimony from Officer Mannings who stated that he discovered petitioner under Turner's shattered window, and later found a brick in the location where petitioner was standing. Tr. at 8-9, 65. Based on this evidence, it was reasonable to infer petitioner's intent to commit larceny.

Moreover, petitioner's contention that the evidence was insufficient because his witnesses testified to "w[h]ere I was at," pet. at 10, is without merit. Petitioner is referring to the testimony of his two cousins, both of whom testified that they were with petitioner in the early morning hours of December 19, 2008. However, both cousins stated they last saw petitioner between 2:30-3:00 a.m., tr. at 79, 81, 82, 83, and neither cousin could account for petitioner's whereabouts at 4:00 a.m., the time of the attempted burglary. Id. at 81, 84.

Based on this evidence, a "rational trier of fact could have found the essential elements of [attempted burglary] beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Accordingly, it was reasonable for the trial court to infer that petitioner attempted to enter Turner's apartment with the requisite intent to commit larceny. Therefore, the decision by the state court was not contrary to or an unreasonable application of federal law, nor was it based on an unreasonable determination of the facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Thus, this Court must defer to the state court and claim one of the petition must be dismissed.

B. Claim 2: Miranda Violation

7

In his second claim, petitioner argues that his rights under the Fifth and Fourteenth Amendments were violated because the trial court allowed statements allegedly obtained in violation of Miranda[2] to be admitted into evidence. When petitioner presented this claim on direct appeal, the Court of Appeals rejected it. First, the Court of Appeals reviewed the relevant law, explaining:

> Under settled principles, the mere fact that a suspect has been seized does not—by itself—implicate Miranda. A temporary detention for purposes of investigation which does not escalate into a de facto arrest does not render a person "in custody" for purposes of Miranda. Test v. Commonwealth, 55 Va. App. 275, 284 n.5, 685 S.E.2d 213, 217 n.5 (2009). And, an investigatory detention does not escalate into a de facto arrest merely because law enforcement officers use physical restraints during the detention. See Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993), aff'd en banc, 18 Va. Ap. 454, 444 S.E.2d 275 (1994). Accordingly, "drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes." United Statesv. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995) (citations omitted); cf. Dixon v. Commonwealth, 270 Va. 34, 41, 613 S.E.2d 398, 401 (2005) (holding when a suspect is restrained in handcuffs and locked in patrol car, it "compels the conclusion that a reasonable person subjected to both restraints would conclude that he was in police custody" though one factor without the other, "may not result in a curtailment of freedom ordinarily associated with a formal arrest." )

R. No. 1730-09-01 at 7.

The court next noted that petitioner's brief on appeal only argued that petitioner was "seized" under the Fourth Amendment, and failed to assert that petitioner was "in custody to a degree associated with formal arrest (a Fifth Amendment requirement under Miranda.)" The court found that "[f]or this reason alone [the] petition for appeal on this ground must be denied." Id.

---

[2] 384 U.S. 436 (1966).

8

However, the Court of Appeals continued by explaining that even if petitioner had correctly framed the issue for appeal, it would still be denied because

> the uncontested facts of this case establish only that appellant's statements were made during a mere investigatory detention. Officer Mannings "secured" appellant in handcuffs after he fled from the officer and refused to comply with orders. Before releasing appellant into the care of his partner, Mannings told appellant he "was under investigation detention until we [found] out what was going on."

Id.

Additionally, the court noted that petitioner was not "forcibly place[d] or lock[ed]" in the squad car, rather Officer Foster "suggested [petitioner] have a seat in the squad car" because of the "inclement weather." Id. at 8. Further, Foster reminded petitioner on two separate occasions that he was not under arrest. Id. Petitioner, on his own accord, "volunteer[ed]" reasons for his presence on the premises, and continued to "pipe[] up" and "br[ea]k . . . [p]eriod[s] of silence" with additional statements. Id. The court also noted that the "detention lasted just long enough for Officer Mannings to investigate the scene and interview the victim." Id. Based on these facts, the court concluded that petitioner was "neither formally arrested nor deprived of his freedom of movement to a degree associated with formal arrest until after Mannings completed his investigation." (emphasis added). Id. Thus, Officer Mannings was not required to advise petitioner of his Miranda rights when he made the statements he sought to suppress at trial. Id. Because the Court of Appeals found petitioner was not in custody, it did not reach the question of whether there was an interrogation for purposes of Miranda.[3] Id. at 6 n.2.

Lastly, the Court of Appeals explained that even if the trial court erred in denying petitioner's motion to suppress, "the error would be harmless beyond a reasonable doubt"

---

[3] The determination by the Virginia Court of Appeals, which was the last reasoned state court decision, is imputed to the Supreme Court of Virginia, which refused further appeal without explanation. See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

because the statements petitioner sought to suppress were not a confession nor directly inculpatory. Id. at 10. Moreover, the trial court made no mention of petitioner's contradictory statements after the suppression hearing. Id. To the contrary, "in reaching the merits of the case, the trial court focused its analysis wholly on whether appellant's actions of breaking the window to gain access into the premises was sufficient to convict appellant . . . ." Id.

When reviewing a state court's judgment, it is imperative to recall that the writ cannot be granted on federal habeas review unless the state court's adjudications are contrary to, or an unreasonable application of, clearly established federal law, or are based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). A federal habeas court may not issue the writ "simply because the court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." Yarborough v. Alvarado, 541 U.S. 652, 665 (2004). Rather, habeas relief is available only if the state court's decision is objectively unreasonable. Id. (emphasis added).

The first step in applying these principles is to determine the relevant clearly established federal law. In this case, it is clearly established that two essential inquiries are necessary for determining whether an individual is in custody for purposes of Miranda. First, the court must ask "what were the circumstances surrounding the investigation." Second, given those circumstances, "would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Id. at 663 (2004) (citing Thompson v. Keohane, 516 U.S. 99 (1995)).

After identifying the clearly established federal law, the federal habeas court must determine whether the state court reasonably applied the law to the instant case. The reasonableness of the state court judgment "can depend in part on the nature of the relevant rule." Id. at 664. The more specific the legal rule, the more narrow the range of reasonableness. Id. The application of a more general rule, however, "can demand a substantial element of judgment."

10

Id. Accordingly, the more general the rule, "the more leeway courts have in reaching outcomes in case-by-case determination." Id.

In this case it must first be noted that fairminded jurists could disagree as to whether petitioner was in custody. Certain facts weigh in favor of a finding that petitioner was in custody. For example, he was chased down by Officer Mannings, put into handcuffs, and placed in the back of a police car. Other facts, however, indicate that petitioner was not in custody. Officer Mannings told petitioner he was under only "investigatory detention." Additionally, Officer Foster told petitioner he was not under arrest on two occasions. Furthermore, petitioner was not forcibly placed in the squad car; rather Officer Foster "suggested" he sit in the car because it was cold outside. Neither officer threatened petitioner with arrest, and the duration of the detention was short.

Based on the differing indications of the facts, the Virginia Court of Appeals' determination that petitioner was not in custody was reasonable. The United States Supreme Court has stated that "the [Miranda] custody test is general." Id. at 665. Therefore, the Virginia Court of Appeals had considerable "leeway" to determine whether petitioner in this case was in custody. The court thoroughly reviewed the relevant facts and concluded that as a whole they indicated petitioner was not in custody when he gave the officers conflicting reasons for being outside of Turner's apartment. Thus, the Virginia Court of Appeals' determination fell within "the matrix of . . . prior [United States Supreme Court] decision[s]" regarding custody under Miranda. Id. Accordingly, the state court's decision was not an unreasonable application of federal law; nor was it based on an unreasonable determination of the facts. Thus, this Court must defer to the state court, and claim two of the petition must be dismissed.

Lastly, as a practical matter it is worth nothing that even if the state court's Miranda determination was unreasonable, petitioner's conviction would still stand because the statements

11

he sought to suppress were not an underlying reason for petitioner's conviction. A review of the trial transcript confirms that petitioner's contradictory statements were not discussed at trial and the trial judge, acting as finder of fact, based his decision to convict petitioner solely on petitioner's actions at the time of the attempted burglary.

## V. Conclusion

For the above-stated reasons, the respondent's Motion to Dismiss will be granted, and this petition will be dismissed. An appropriate Order shall issue.

Entered this 27th day of March, 2012.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

12